C. G. WATKINS, Respondent, v. W. C. THOMAS, Appellant.

Kansas City Court of Appeals, January 24, 1910.

1. CONTRACTS: Statute of Frauds. In an action by real estate broker for his commission it is not necessary that he should have a binding written contract with the purchaser; all that ' is required in that regard is that he secure a purchaser who is willing and able financially to buy on the proposed terms.

2. ———: Custom. The court will take judicial notice of the custom of the seller of land of furnishing an abstract of title and that the authority to sell carries with it the obligation to furnish such abstract.

3. ———: Agent's Authority: Waiver. Although the agent made a contract for the sale of land in which he varied from the terms of his authority with regard to the date of the deferred payments, the variation was waived by the principal by asking to delay the date of surrounding possession and stating that "everything else was all right."

4. ———: ———: ———. The insistence of the principal that the purchaser assume additional burdens held suggestive of bad faith on his part rather than as indicating that the agent had violated his authority.

Appeal from Moniteau Circuit Court.—*Hon. Wm. H. Martin*, Judge.

AFFIRMED.

*Moore & Williams* for appellant.

(1) The issues in this case, as stated in the petition, are: First. That, prior to the first day of June, 1907, the defendant, Thomas, placed the land described in the petition, consisting of 7533 acres, situate in Sherman county, Texas, in the hands of plaintiff, Watkins, as his agent, to sell the land, and authorized him to dispose of the same, for the sum of six dollars per acre, $15,198 in cash, and the balance of the pur-

chase price to be covered by four vendor's lien notes for $7,500 each, due in one, two, three and four years with six per cent, interest; that the compensation plaintiff was to receive, if he found a purchaser, was all he should realize over and above six dollars per acre. Second. That the plaintiff found a purchaser for the land at $6.25 per acre, who was ready, willing and able to pay for the land in this way, and on the terms authorized in the contract, and the twenty-five cents per acre commission. Third. That the purchaser agreed, and was willing, to pay $17,081.25 cash, and execute the four vendor's lien notes for the balance. Fourth. That the purchaser, George T. Parr, of Dalhart, Texas, and the plaintiff informed the defendant that the purchaser was ready, willing and able to purchase the land on the terms authorized by the defendant and plaintiff, as agent of defendant, entered into a written contract with said Parr for the sale and conveyance of the land, and said written contract so entered into was approved and ratified by defendant thereafter, and defendant refused to deed the land on the terms of the contract. Our courts have repeatedly decided that a plaintiff is confined to the case he states in the petition, both in the admission of evidence and the giving of instructions. Veatch v. Norman, 109 Mo. App. 387; Barton v. Chicago Insurance Co., 113 Mo. App. 462; Dry Goods Co. v. Sally, 198 Mo. 696; Koenig v. Railroad, 173 Mo. 698; Manufacturing Co. v. School District, 54 Mo. App. 731; Sundmacher v. Lloyd, 114 Mo. App. 317; Politonitz v. Telephone Co., 115 Mo. App. 57. (2) There is a variance between the allegations in the petition and the terms of the written contract sued on, in reference to the payment of the vendor's lien notes; in the contract the payments are "on or before" leaving the time optional with the purchaser. It appears all through the fruitless negotiations following the telegrams of plaintiff of June 3d, stating that he had sold defendant's land and signed

the alleged contract that plaintiff, arbitrarily, not only wrote, but fixed the terms of the instrument to suit himself; and as soon as defendant learned of the terms, he refused to sell, except upon the terms that suited him, and which he had in his mind all the time, which terms were embodied in the deed he executed to same, and sent to Watkins on July 19th, mailed to Dalhart. To constitute a contract, the minds of the parties must meet, and meet in writing. The acceptance must be in writing. Patton v. Rucker, 29 Tex. 402; Foster v. Land Co., 2 Tex. Civ. App. 505, 22 S. W. 266.

*R. M. Embry* for respondent.

(1) The case of Johnson v. Fecht, 185 Mo. 335, and the case of Hawkins v. McGroarty, 110 Mo. 546, cited by appellant in the (1) and (2) divisions of his brief are not in point. The issues are not the same. In so far as they bear on the present case, they sustain the right of plaintiff to recover. The statute of Missouri referred to by appellant is not involved in this controversy. The rights of the grantor and the grantee and a third party claiming to be a grantee are not involved; this is simply a suit by an agent to recover his commission. The courts of this State zealously guard against the efforts of principals to avoid payment of commissions. Corder v. O'Neill, 176 Mo. 401. (2) The appellant's agent C. G. Watkins was given the authority to sell appellants land at $6; this clothed the agent with general powers to sell, and the means and measures necessary to carry these powers into effect, by contract, were granted with the power to sell. Mechem on Agency, sec. 311; State ex rel. v. Gales, 67 Mo. 143. (3) The ratification by the principal of an agreement to sell land on different terms is equivalent to prior authority and the principal will be bound for the amount of the commission agreed upon and he can not relieve himself from liability by a refusal to consummate the sale. Nesbit v. Hesler, 49 Mo. 383; Gelott v. Ridge, 117 Mo. 553; Ferris v. Thaw, 72 Mo.

446; Meyer v. Smith (Tex.), 21 S. W. 995. (4) The
point in regard to the right of Watkins to bind his
principal has been directly passed upon by the Supreme
Court of this State. The authority to sell was given
by letter, the agent executed a contract in his prin-
cipal's name, and it was held he had the right and
authority to do so. This decision covers the point in
our case precisely. Smith v. Allen, 86 Mo. 179. (5)
We further cite a Texas case directly in point in re-
gard to the right of the agent Watkins to execute a
contract in his principal's name. In this case the au-
thority given was by letter and as follows: "If good
opportunity offers to sell everything I have I would be
glad to sell." "It may be that parties will come to
San Antonio who will be glad to purchase my gas
stock and real estate." The agent was authorized by
this to execute a written contract in the name of his
principal, for the sale of the real estate. Lyon v. Pol-
lock, 99 U. S. 668; Johnson v. Dodge, 17 Ill. 441; Law-
rence v. Taylor, 5 Hill (N. Y.) 107; Hawkins v. Chace,
19 Pick (Mass.) 502; Brown v. Eaton, 21 Minn. 409;
Newton v. Bronson, 13 N. Y. 587. (6) In this case
the agent had written authority to sell. But it is not
necessary that an agent have written authority to sell.
Cotton v. Rand (Texas), 51 S. W. 55; Gwinnup v. Si-
bert, 106 Mo. App. 709; Goodson v. Embleton, 106 Mo.
App. 77; Wilson v. Clark (Tex.), 79 S. W. 649; Conk-
ling v. Krakauer, 70 Tex. 735; Brackenridge v. Clar-
idge, 91 Tex. 530. (7) Appellant complains of var-
iance in the petition and proof, and instructions. There
was no variance, and the complaint is wholly without
foundation, but even if there was variance in matters
complained of, appellant did not take advantage of
it as required by the statutes and numerous decisions.
No affidavit of surprise was filed. R. S. 1899, sec. 655;
Harrison v. Lakenan, 189 Mo. 581; Litton v. Railroad,
111 Mo. App. 140; Gaume v. Horgan, 122 Mo. App
700; Hensler v. Stix, 113 Mo. App. 162.

BROADDUS, P. J.—This action is to recover a commission alleged to be due from defendant to plaintiff for the sale of defendant's lands.

The defendant was the owner of a large tract of land in Texas, situated in Sherman county. The plaintiff is a resident of the State of Iowa and defendant resides in California, Missouri. In February, 1907, plaintiff went to Dalhart, Texas, and became the local manager of what was known as the Tuttle Land Company. The defendant having seen some of the circulars of the Tuttle Land Company and being desirous of selling his Texas land, on May 27, 1907, wrote plaintiff a letter in which he requested to know if plaintiff would list his land on the condition that if plaintiff sold it before he did the plaintiff would receive the commission; and asking him what his commissions were. On May 27, 1907, plaintiff in answer wrote defendant that: "We would be glad to handle your land," and asking price, description, and stating that "it would be better that defendant put a net price on his land, as we have to pay our agents in the North $1.00 to $1.50 per acre and we want about five per cent, commission."

On May 29, 1907, the defendant wrote to plaintiff as follows: "In reply to your letter of May 27th, my land in Sherman County, Texas, consist of the following (here follows description) a total of 7,533 acres. If you think I can sell this land outright at six dollars per acre, $15,198 cash, balance in one, two three and four years, six per cent., I will come to Dalhart and talk with you. I am offering this land at a low price considering the land and improvements. Please write me at once."

On May 31st plaintiff wired defendant as follows: "Can close your land at $6.00 per acre, patent bases, less five per cent commission, subject to ten days to approve land one thousand dollars forfeit, $4,000, on approval of abstract, $5,000, in six months, balance in

one, two, three and four years, interest six per cent. Wire answer." On.the same day he wrote defendant repeating his telegram, adding if the proposition was not accepted to give him thirty days on the land on terms given in his letter of the 29th instant.

On June 1st, defendant wrote to plaintiff declining the offer and stating that he expected to be in Dalhart next week.

On June 3d, plaintiff wired defendant as follows: "Have sold your land and signed contract on terms stated in letter of May 29th,—One thousand dollars deposited here in First National Bank. Send abstract to be extended." On the same day he wrote defendant inclosing a copy of the contract of sale and stating that: "This is according to the terms stated in your letter of the 29th, with 25 cents per acre added as my commission. I have deposited the original contract with the First National Bank, Dalhart, Texas, and the $1,000, is held in escrow by the bank, until you can get abstract extended, the title approved and the papers turned over. You can make out a deed to George T. Parr, and send it to the bank here with instructions. My commission of 25 cents per acre will be $1,883.25. This you can authorize the bank to pay to me." The contract complies with the terms contained in defendant's said letter of May the 29th, except it provides that the deferred notes for the unpaid purchase money are made payable on or before maturity, while the terms stated in the letter strictly construed imply that they are to be payable at maturity.

The defendant testified that he did not keep a copy of his letter of May the 29th.. And that he did not get the letter and contract mailed to him at California by plaintiff. He arrived in Texas on the 5th of June and he admits that the letter could have gotten to his home before he left for Texas. The testimony was conflicting as to whether the contract of sale was executed on the 1st or 3d day of June. But that matter is of

no importance as of either date, as plaintiff's telegram and letter were of the latter date. Defendant testified that on his arrival in Texas he was unable to obtain an examination of his letter of May 29th in order to ascertain what the terms of his proposal were and that he did not succeed in getting to see the contract. It is admitted that plaintiff's memory was uncertain, and the inference is unavoidable that he did see the contract soon after his arrival in Texas on the 5th of June. He had been informed by plaintiff's telegram of June the 3d that it was in the bank at Dalhart. And on June the 6th he telephoned to plaintiff as follows: "Can't well turn land over till Jan. 1, 1908, on account of cattle and partner. Every thing else all right." On the same day he wrote plaintiff as follows: "My partner in cattle met me here yesterday and I find that I can't well give possession of the land before Jan. 1, '08, but will make the effort and will try to do so sooner. Answer. I hope this will not interfere with the deal and will proceed with the papers as soon as I hear from you."

On June 8th, plaintiff wired defendant: "Make out papers to give possession Jan. Will arrange later."

On the same day defendant wrote plaintiff with a view of leasing the land from the purchaser for the next year for grazing sheep.

Other correspondence occurred between the parties which had no particular bearing on the questions at issue.

Mr. Lile, plaintiff's attorney prepared a deed conveying the land to the purchaser, in which it was stipulated that possession was not to be given until January 1, 1908; the notes for the deferred payments should be made payable at maturity; that the purchaser assume an encumbrance of a mortgage to the State of Texas of over $4,000; and also pay the taxes for the current year. The proposed purchaser refused to accept the deed as tendered and the sale was not con-

summated. It is admitted that Parr was willing and financially able to carry out the terms of the contract.

The jury returned a verdict for plaintiff and defendant appealed from the judgment.

It is contended by defendant that the written contract did not bind defendant unless he ratified it in writing. That it was not enforceable under the. Statute of Frauds is also contended. The position might be right, if this was a proceeding to compel defendant to convey the land under the provisions of the statute, but it is not applicable to this case. It was not necessary that there should have been any writing whatever. All that was required was that plaintiff had secured a purchaser who was willing and able financially to buy on the proposed terms. [McCormick v. Henderson, 100 Mo. App. 647, and cases there cited.] This view of the law was embodied in the instructions of the court to the jury, and the finding was conclusive of that question. The letters, telegrams and telephone messages in evidence we think justified the verdict.

The defendant asked the court to instruct the jury as follows, which the court refused: "The jury are instructed that the letter from defendant Thomas to plaintiff date May 29, 1907, did not authorize the plaintiff to stipulate for him, that he, defendant, would furnish an abstract of the title to said land for the benefit of George T. Parr, the alleged purchaser, nor agree to take four vendor's lien notes for $7,500, each due on or before 1, 2, 3, and 4 years from date at six per cent, the legal effect of which would be to make said notes payable at the option of the maker Parr, and if you find from the evidence that the alleged contract made by the plaintiff contained such stipulations, then the same was void and your finding will be for defendant." There is nothing in the letter requiring defendant to furnish an abstract of title to the land and if the instruction had been given it would have amounted to a direction to the jury to find a verdict for the defend-

Watkins v. Thomas.

ant.   Is it possible that the authority to sell contemplated that the agent would find any one who would be willing to buy without first learning that defendant had title, and how could one know that he had such title unless he had an abstract to so show?   The court takes judicial notice of the custom in such cases that the authority to sell carries with it the obligation to furnish such abstract.   Besides defendant recognized that it was his duty to furnish it by so doing.   The authority to take notes for deferred payments payable on or before maturity was strictly speaking a technical variation from the terms of the authority to sell on, "one, two, three and four years" at six per cent.   But it was in accordance with the usual custom.   However that may be defendant waived the obligation when he was asking to delay the date of his surrendering the possession of land in his message to plaintiff the 6th of June that, "Every thing else was all right."

The court placed fairly before the jury defendant's side of the case in the instructions given.   Other instructions offered and refused were properly refused.

The insistence of defendant that the purchaser should assume the liens on the land for the taxes for the year, and that to the State for over $4,000; and that he should retain possession until the first of January, 1908, were outside of the terms upon which he had authorized plaintiff to make the sale.   And as we have seen he waived the right of option in the purchaser to pay the notes on or before maturity.   Such insistence seems to us preposterous and is suggestive of bad faith on his part; and that it was inspired for the purpose of avoiding a sale of his lands and not because plaintiff had violated his authority.   If there were any errors committed by the court, and we do not believe there was, the judgment is so manifestly for the right party that it ought to be affirmed.   It is so ordered.   All concur.